# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

NOAH SCHROEDER,
    Plaintiff,

 v.              Case No. 15-CV-1158

TERRY SAWALL et al.,
    Defendants.

## DECISION AND ORDER

Plaintiff Noah Schroeder, a Wisconsin state prisoner proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 alleging that defendants, state correctional officials, violated his Eighth Amendment rights by failing to protect him from attack by another prisoner. Defendants move for summary judgment.

### I. BACKGROUND

The underlying facts presented here are taken from defendants' proposed findings of fact, Docket No. 57, and plaintiff's verified brief in opposition to defendants' motions for summary judgment, Docket No. 68. At all relevant times, plaintiff was incarcerated at Redgranite Correctional Institution, where most of the defendants worked as employees of the Wisconsin Department of Corrections.

On March 12, 2015, defendant Terry Sawall interviewed plaintiff about allegations that another prisoner, Kevin Stuckey, was using his personal identification number to make unauthorized three-way calls through his sister, who was not incarcerated. The next day, Sawall issued a conduct report to Stuckey naming plaintiff and others and stating that they told Sawall when interviewed that Stuckey let them make three-way calls through his sister if they made him food.

Stuckey approached plaintiff and asked why plaintiff "snitched on him." Docket No. 68, at 1. Plaintiff didn't know what Stuckey was talking about, so Stuckey showed him Sawall's report. Plaintiff was "concerned about this" and tried to convince Stuckey and others that Sawall had lied in his report and that he "was no snitch." *Id.* Plaintiff wrote to Sawall and defendant Steven Schueler, then Redgranite's security director, that being labelled a snitch jeopardized his safety, but he did not hear back from either.

On March 23, 2015, plaintiff filed an inmate complaint accusing Sawall of staff misconduct for issuing a false conduct report. Defendant Michelle Smith, an inmate complaint examiner (ICE), recommended dismissal because plaintiff was improperly challenging the factual basis of another inmate's conduct report. She also noted,

> While complainant states staff revealed him as an informant which jeopardized his safety and well-being, this generalized statement is not supported by documentation. It stands to reason that if there was a legitimate safety concern present, the inmate that was issued the conduct report would be the source of that concern. However, by his own report it is clear that Schroeder has freely associated with the Inmate Stuckey since the conduct report was issued.
>
> If he has continued concerns of safety, he will need to provide a detailed written statement of what specifically has occurred to SD Schueler for review.

Docket No. 1003, at 2–3. Defendant Michael Meisner, Redgranite's warden, reviewed Smith's recommendation and dismissed plaintiff's complaint.

In April 2015, plaintiff filed a second inmate complaint accusing Smith of violating prison policy by not interviewing him about his first complaint. Defendant Ashley Freitag, another ICE, recommended dismissal because plaintiff's first complaint was still pending. Meisner reviewed Freitag's recommendation and dismissed plaintiff's second complaint. Plaintiff also filed a third inmate complaint accusing Meisner of violating prison policy by not responding appropriately to his concerns about Smith. Freitag

disagreed and recommended dismissal. Defendant Scott Eckstein, Redgranite's deputy warden, reviewed Freitag's recommendation and dismissed plaintiff's third complaint.

On June 16, 2015, plaintiff was out on recreation with other prisoners under the supervision of two correctional officers, defendants Tom Dobberstein and Brian Kropp. Another inmate, David Schroeder, who was not on recreation at the time, entered the recreation field, quickly approached plaintiff, assaulted him, choked him, and stabbed him repeatedly with the sharpened end of a paint brush. Dobberstein and Kropp yelled for Schroeder to stop, radioed for backup, and physically restrained Schroeder.

## II. DISCUSSION

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

Under the Eighth Amendment, prison officials must "protect those in their charge from harm from other prisoners." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001)). "Yet, a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." *Id.* Indeed, a prison official does not violate the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat

3
Case 2:15-cv-01158-LA   Filed 09/26/17   Page 3 of 5   Document 81

to his safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (alteration in original) (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (per curiam)). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Id.* at 481. But, "as the vagueness of a threat increases, the likelihood of 'actual knowledge of impending harm' decreases." *Dale*, 548 F.3d at 569. And, "[c]omplaints that convey only a generalized, vague . . . concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas*, 798 F.3d at 480–81.

Plaintiff's claims against Sawall, Meisner, Schueler, Smith, Wall, Freitag, and Eckstein all concern Sawall naming him as a cooperating witness in another inmate's conduct report and are based on "the inherent risks faced by snitches in prison" rather than any specific threat. *See Dale*, 548 F.3d at 569–70. Plaintiff's complaints, which conveyed only a general concern about his safety, did not create actual knowledge of impending harm. Plaintiff referenced no specific, credible, or imminent risk of harm, and he never identified David Schroeder or any other prospective assailant. In fact, nothing in the record suggests that Schroeder's attack was related to the conduct report. Schroeder attacked plaintiff months after Sawall issued the report, and Schroeder's later testimony during his disciplinary hearing does not connect the attack to the report.

Plaintiff's claims against Dobberstein and Kropp concern their allegedly deficient conduct in the recreation yard. Plaintiff argues that they did not act quickly enough when they saw Schroeder, who was not supposed to be in the yard at the time. However, the

record does not support the reasonable inference that Dobberstein and Kropp acted with the requisite indifference to a specific threat to plaintiff's safety. To the contrary, the record suggests that Schroeder did not appear to be a threat to anyone until he started attacking plaintiff and that as soon as he did, Dobberstein and Kropp intervened.

### III. CONCLUSION

**THUS, IT IS ORDERED** that defendants' motions for summary judgment (Docket Nos. 52, 56) are **GRANTED**. The Clerk of Court shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this decision to the Seventh Circuit Court of Appeals by filing a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3–4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days after the entry of judgment. Any motion under Rule 60(b) must be filed within a reasonable time but generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

The court expects the parties to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2017.

/s Lynn Adelman
LYNN ADELMAN
District Judge